USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/1/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
EXTREME REACH, INC.,  :
                     Plaintiff, :
                                         :      22-CV-7948 (VEC)
          -against- :
                                           :      OPINION AND ORDER
                                           :
PGREF I 1633 BROADWAY LAND, L.P.; 1633 :
BROADWAY OWNER I, LP; and 1633 :
BROADWAY OWNER II, LP, :
                                           :
                                 Defendants. :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

      Plaintiff Extreme Reach, Inc. ("Extreme Reach" or "Tenant") has sued Defendants seeking a declaratory judgment and an award for attorneys' fees.[1] *See* Compl., Dkt. 1. Defendants counterclaimed for declaratory judgment and attorneys' fees. *See* Answer, Dkt. 20. Both parties have moved for summary judgment. *See* Pl. Mem. of Law, Dkt. 46; Def. Mem. of Law, Dkt. 54. For the reasons discussed below, Plaintiff's motion is GRANTED in part and DENIED in part; Defendants' motion is DENIED.

## BACKGROUND

      This case involves a straightforward question: whether Plaintiff complied with the early termination provision of the lease agreement.

---

[1] Plaintiff's Complaint asserts a cause of action styled as a "Breach of the Lease," Compl. ¶¶ 76–82; based on the allegations in the Complaint, the Court interprets this second cause of action as one for breach of the implied covenant of good faith and fair dealing.

The relevant, undisputed facts are as follows.[2]  Plaintiff entered into a lease agreement (the "Lease") with Defendants PGREF I 1633 Broadway Land, L.P.; 1633 Broadway Owner I, LP; and 1633 Broadway Owner II, LP (collectively, "Defendants" or "Landlord"), for the fifth and sixth floors of 1633 Broadway, New York, New York, for a term of 15 years and 10 months. Joint Statement of Facts ("JSOF") ¶ 1, Dkt. 42; Pl. 56.1 Statement ¶ 7, Dkt. 51.  Section 11.01(a) of the Lease provides, in relevant part:

> [e]xcept as otherwise set forth below, any notice . . . hereunder by either party to the other party shall be in writing and shall be deemed to have been duly given only if sent by [] registered or certified mail, return receipt requested, . . . addressed to such other party, which address for Landlord shall be the address as hereinbefore set forth, Attention: Vice President – Leasing, with copies to the Vice President of Property Management, at the address as hereinbefore set forth, and to the Building Manager, in care of the Building Office, 1633 Broadway, New York, NY 10019 . . . .

JSOF ¶ 3.  That section further provides that "[a]ny notice . . . given pursuant to the above shall be deemed received on the day of delivery (with signed receipt) or rejection, as the case may be." *Id.*

> Section 34.01 of the Lease contains an early termination provision:
>
> (a) Tenant may elect on a one time basis only, at Tenant's option, to irrevocably terminate this Lease . . . as of [October 14, 2023, the Surrender Date,] provided that Tenant shall give to Landlord written notice (Termination Notice) not [later than July 14, 2022] of Tenant's election to so terminate this Lease (time being of the essence with respect to the giving of such notice) and concurrently with the giving of such notice, Tenant shall make to Landlord a [Termination Payment] . . . .
>
> (b) In the event of the giving of such Termination Notice and the making of the Termination Payment, this Lease . . . shall terminate on the Surrender Date . . . and the Fixed Rent and other charges payable hereunder (other than the Termination Payment) shall be apportioned as of the Surrender Date.

---

[2]     Where "[t]he parties do not dispute the material facts underlying the claim[,]" the case rests on interpretation of the Lease, which "is a question of law." *VAM Check Cashing Corp. v. Fed. Ins. Co.*, 699 F.3d 727, 729 (2d Cir. 2012).

> (c) In the event Tenant does not send the Termination Notice to Landlord on or before [July 14, 2022], then this Article 34 shall be deemed null and void and deleted from this Lease.

JSOF ¶ 5. Absent early termination, the Lease expires April 14, 2028. Pl. 56.1 Statement ¶ 8. Plaintiff's deadline to exercise its early termination option was July 14, 2022. *See* Pl. 56.1 Statement ¶ 10; Def. Counterstatement ¶ 81, Dkt. 51.[3]

On July 12, 2022, Jorge Martell, Plaintiff's Chief Financial Officer, emailed Peter Brindley and Bernard Marasco, PGI's[4] Executive Vice President of Leasing and Senior Vice President & Counsel of Leasing, respectively, stating:

> Please find attached the early termination notice for our 1633 Broadway lease. We will follow up with payment of the early termination fee tomorrow. Can you please confirm your wiring instructions. We will be hand delivering and mailing (certified mail) this notice as well. Please confirm receipt of this email and if you could please confirm your bank wiring instructions that would be great.

JSOF ¶ 11; *see also* Def. Counterstatement ¶¶ 45–46.[5] Attached to the email was a copy of the purported Termination Notice (the "Notice"). *See id.* ¶¶ 11–16. That same day, Plaintiff sent the Notice to Defendants: by certified mail, return receipt requested, in an envelope addressed to "Peter Brindley/Bernard Marasco" at 1633 Broadway, *see id.* ¶ 14; Ex. H, Dkt. 42-8,[6] and by

---

[3] Although Defendants purport to dispute this fact in their response to Plaintiff's 56.1 Statement, Def. Counterstatement ¶ 10, Defendants later confirm in their Counterstatement and throughout their briefing that Plaintiff's deadline to terminate was, by any measure, July 14, 2022, *id.* ¶ 81; *see also* Marasco Decl. ¶ 22, Dkt. 52.

[4] "PGI" refers to Paramount Group Inc., the apparent affiliate of Defendants that "is Landlord's agent with respect to the Lease at issue." *See* Def. Counterstatement ¶¶ 5, 46; JSOF n.1.

[5] The parties agree that Plaintiff contacted Defendants or Defendants' "representatives" as early as March 2022 to determine the proper calculation for the Termination Payment, putting Defendants on notice in March that Plaintiff would be exercising its option to terminate the Lease early. *See* JSOF ¶¶ 6–8.

[6] According to the tracking number provided in the JSOF, the letter was in the possession of the United States Post Office in Needham Heights, Massachusetts on July 12, 2022 at 1:56 p.m., was out for delivery on July 16, 2022, and was picked up at the Post Office on July 18, 2022. *See* USPS Tracking, Tracking No. 70211970000162274607; *see also* JSOF ¶ 14; Def. Mem. at 16 n.3.

3

hand-delivery to "Landlord's representative, Susan Conlon," in an envelope labeled, "Attention: Peter Brindley, Bernard Marasco," JSOF ¶¶ 15–16; Ex. I, Dkt. 42-9.

On July 13, 2022, Mr. Martell emailed Mr. Brindley and Mr. Marasco informing them that the Notice had been hand-delivered and asking them to "confirm receipt" and to "provide the wire instructions to make the termination payment." JSOF ¶ 17; Ex. J, Dkt. 42-10. Mr. Martell also emailed other representatives of Defendants that day requesting the wire details. *Id.* ¶¶ 18–19. That same day, Plaintiff sent $7,500,000 to Defendants by ACH, which Defendants received on July 14, 2022, along with an additional ACH payment of $32,543.93 (collectively, the "Termination Payment"). *Id.* ¶¶ 20–21.[7] On July 20, 2022, Defendants "rejected" Plaintiff's Notice and returned Plaintiff's Termination Payment by check. *Id.* ¶ 22.

The parties agree that the applicable provisions in the Lease are unambiguous, *see* Pl. Mem. at 15; Def. Mem. at 12, and that Plaintiff was required to make the Termination Payment "concurrently" with the Termination Notice, *see* Pl. Mem. at 19–20; Def. Mem. at 13. They dispute whether Plaintiff complied with the early termination provision inasmuch as Defendants did not receive the Notice and the Termination Payment at the same time. *See* Def. Mem. at 13; Def. Counterstatement ¶ 25.

Plaintiff moves for summary judgment with respect to its claim for a declaratory judgment that it complied with the early termination provision and that, accordingly, the Lease will terminate effective October 14, 2023. *See* Pl. Mem. at 16; Compl. ¶ 75. Plaintiff additionally seeks attorneys' fees because Defendants "intentionally and in bad faith tried to create a record of untimely payment . . . when it deliberately refused to confirm receipt of the Termination Notice or to provide wire instructions," which is "compounded" by Defendants'

---

[7] Neither party disputes that Plaintiff paid Defendants the full Termination Payment. *See* JSOF ¶¶ 20–21.

4

"bad faith by persisting with its defenses and stubbornly refusing to stand down." Pl. Mem. at 24.

Defendants also move for summary judgment. Defendants argue that Plaintiff failed to comply with the early termination provision because Plaintiff failed to deliver the Termination Notice "concurrently" with the Termination Payment and in the manner required by the Lease. Def. Mem. at 13. Accordingly, Defendants seek a declaratory judgment that (1) Plaintiff did not terminate the Lease; (2) pursuant to § 34.01(c) of the Lease, Article 34 is null, void, and deleted from the Lease; and (3) the Lease remains in full force and effect through the original expiration date of April 14, 2028. *See* Def. Mem. at 3.

## DISCUSSION

When parties cross-move for summary judgment, the Court analyzes each motion "construing the evidence in the light most favorable to the non-moving party." *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018) (citation omitted). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks and citation omitted).

While the Court must construe the facts in the light most favorable to the non-moving party, "a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Fed. Trade Comm'n v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019) (internal quotation marks and citation omitted).

Under New York law, "strict compliance with contractual notice provisions need not be enforced where the adversary party does not claim the absence of actual notice or prejudice by the deviation." *Thor 725 8th Ave. LLC v. Goonetilleke*, 138 F. Supp. 3d 497, 510 (S.D.N.Y. 2015) (cleaned up).  New York recognizes the doctrine of substantial compliance, even in the context of a commercial lease between sophisticated parties, where a party relied in good faith on its interpretation of its obligations under the lease and in the absence of prejudice to the other party.  *See Waldbaum, Inc. v. Fifth Ave. of Long Is. Realty Assocs.*, 650 N.E.2d 1299, 1302 (N.Y. 1995).

## I. The Early Termination Provision

At the heart of the parties' dispute is the language contained in Article 34 of the Lease. Both parties agree that the language is clear and unambiguous yet disagree as to its application to the circumstances here.

The Early Termination Provision gives Plaintiff the option to terminate the Lease by "giv[ing] to Landlord written notice . . . of Tenant's election to so terminate this Lease (time being of the essence with respect to the giving of such notice) and concurrently with the giving of such notice, Tenant shall make to Landlord" the Termination Payment.  JSOF ¶ 5; Ex. A, § 34.01(a).  "[T]he giving of such Termination Notice and the making of the Termination Payment" operates to terminate the Lease on the Surrender Date.  Ex. A, § 34.01(b).  If Plaintiff "does not send the Termination Notice on or before" July 14, 2022, then the right to early termination is "deemed null and void and deleted from [the] Lease."  *Id.* § 34.01(c).

The Early Termination Provision does not describe *how* notice must be "given" or the method by which the Termination Payment must be "made," *see id.*, but Article 11 of the Lease provides some guidance as to the former.  For a notice to "be deemed to have been duly given"

to Defendants, it must be: (1) in writing; (2) "sent by (i) registered or certified mail, return receipt requested, or (ii) recognized overnight courier (requiring signed receipt)"; and (3) addressed to "Attention: Vice President of Property Management" and to the "Building Manager, in care of the Building Office, 1633 Broadway, New York, NY 10019." *See* JSOF ¶ 3; Ex. A, § 11.01(a). "Any notice . . . given pursuant to the above shall be deemed received on the day of delivery (with signed receipt)." *Id.* The Lease does not specify how the Termination Payment must be made.

Accordingly, for Plaintiff to exercise its early termination option, Plaintiff was required concurrently to provide notice and payment by July 14, 2022, as described under Article 34, and in the manner set forth in Article 11. Plaintiff complied with both.

### A.     The Termination Notice

The record is clear that on July 12, 2022, two days prior to the July 14, 2022 deadline, Plaintiff emailed and hand-delivered to Defendants a copy of the Notice. JSOF ¶¶ 11–16. Also on July 12, 2022, Plaintiff sent the Notice by certified mail, with return receipt requested, *id.* ¶ 14; the mailing was delivered to the New York post office by July 16, 2022, and was collected by Defendants on July 18, 2022, Def. Mem. at 16 n.3; *supra* n.6. The Notice was addressed to the Vice President of Leasing (Mr. Brindley) and Senior Vice President and Counsel of Leasing (Mr. Marasco). JSOF ¶ 14. The envelope, however, was not specifically labeled "Attention: Vice President – Leasing." *See id.*

Defendants argue that "the Purported Termination Notice was not served as required by the Lease." Def. Mem. at 13, 15. Defendants insist that the Notice was not "served" properly because Defendants "received only the Purported Termination Notice, without any payment, by email and hand-delivery on July 12, 2022[,] . . . neither of which is permitted by the Lease." *Id.*

7

at 16.  When Defendants received the Notice by a "permitted method for serving notices pursuant to the Lease" — i.e., certified mail — the Notice arrived "no earlier than July 16, 2022," "without any payment," and "was not addressed to the proper individuals."  *Id.*[8]

Defendants' argument is flimsy at best.  As an initial matter, under Article 11, the Notice was "duly given" because it was sent by certified mail on or before July 14, 2022.  *See* Ex. A, § 11.01(a).  Although that same provision indicates that a notice is "deemed fully received on the day of delivery," *see id.*, the early termination provision requires Plaintiff to "give to Landlord written notice" to terminate the Lease by July 14, 2022; it does not require notice to be received by that date.  *See id.* § 34.01(a).  Moreover, Section 34.01(c) makes clear that "[i]n the event Tenant does not send the Termination Notice to Landlord on or before" July 14, 2022, the Tenant's right to terminate the Lease early ceases to exist.  JSOF ¶ 5.  As for the argument that Plaintiff failed to address the Notice to the "proper individuals," Def. Mem. at 16, not once do Defendants indicate precisely who those proper individuals were if they were not Messrs. Brindley and Marasco, the Vice President of Leasing and the Senior Vice President and Counsel of Leasing.[9]  Given that time was "of the essence with respect to the giving" of the Termination Notice, it is a mystery why Defendants would be dissatisfied with receiving actual notice of Plaintiff's termination of the Lease two days before the contractual deadline.

By the plain terms of the Lease, Plaintiff timely complied with the early termination provision by duly giving notice on July 12, 2022, and by sending notice that same day by certified mail, the method required in Section 11 for giving notice.  Even assuming Plaintiff

---

[8]  As Plaintiffs correctly point out, there is no requirement in the Lease that Notice be "served" — only that Notice be "given."  *See* JSOF ¶¶ 3, 5.

[9]  Defendants admit that had the envelope been "addressed generically" to Defendants' "Vice President of Leasing," it would have been delivered to Douglas Neye, who would not have been the proper recipient, because Mr. Brindley, as Executive Vice President of Leasing for PGI, has "oversight of all leasing."  *See* Def. Counterstatement ¶¶ 45–46.

8

committed any of the technical missteps about which Defendants complain, the fact that Defendants had *actual* notice by multiple methods days before the deadline, with payment in hand on the deadline, demonstrates that Defendants were not prejudiced whatsoever and highlights the frivolity of Defendants' position. *See, e.g.*, *Ogden v. Hamer*, 48 N.Y.S.2d 500, 501 (1st Dep't 1944) (finding lease was not terminated when commercial tenant "substantially performed" covenants under the lease and no injury resulted to the landlords). In short, the Court finds that Plaintiff has shown as a matter of law that it properly provided Defendants notice to exercise the Lease's early termination option.

### B.  The Termination Payment

Aside from the Notice requirement, Article 34 required Plaintiff to make the Termination Payment "concurrently with the giving of [the Termination] notice." Ex. A, § 34.01(a). On July 13, 2022, Plaintiff sent Defendants the Termination Payment by ACH in two separate installments, both of which Defendants received on July 14, 2022. JSOF ¶ 20–21. There is no dispute that Plaintiff timely made the Termination Payment — it was received on July 14, 2022, the deadline to exercise the early termination option. *See id.*; Pl. Mem. at 19 (citing deposition testimony of Defendants' corporate representative). Nor is there any dispute over the amount of the Termination Payment — $7,532,543.93. The problem, in Defendants' view, is that the Lease does not require "timely" payment, but "concurrent" payment.

In their briefs, the parties offer dueling definitional arguments of "concurrently." *See* Def. Mem. at 13; Pl. Reply at 9. Defendants argue that Plaintiff failed to comply with this portion of the early termination provision because Plaintiff failed to make the payment "at the same time" as it gave the Notice. Def. Mem. at 13–15; *see also* Def. Reply at 5 n.3, Dkt. 57. But the Court need not adopt either party's definition for "concurrently": the fact that Defendants

received the ACH payment two days after Plaintiff gave the Termination Notice demonstrates that Plaintiff at the very least substantially complied with the early termination provision. *Thor*, 138 F. Supp. 3d at 510. Defendants have not offered any evidence or argument that they were prejudiced by the receipt of the ACH payment shortly after the receipt of the Notice.

Defendants argue, however, that strict compliance was required by virtue of the inclusion of the "timing-of-the-essence" clause ("TOE"). Def. Mem. at 16. Defendants' reading of that clause is mistaken. The TOE clause clearly applies to the notice requirement, not to the payment requirement: the clause, set off by parentheses, immediately follows the notice requirement and exclusively references "the giving of such notice" as being subject to the TOE. *See* Ex. A, § 34.01(a) ("Tenant shall give to Landlord written notice (Termination Notice) not less than fifteen (15) months prior to the Surrender Date of Tenant's election to so terminate this Lease (time being of the essence with respect to the giving of such notice) and concurrently with the giving of such notice, Tenant shall make to Landlord a payment . . ."). That the TOE clause applies exclusively to the notice requirement defeats Defendants' implicit suggestion that concurrent payment was somehow as essential (if not more) as the timing of the Notice; it also undermines Defendants' belaboring over the method by which the Notice was delivered by certified mail. There is no dispute that Defendants received actual notice of Plaintiff's intent to terminate the Lease at least as early as July 12, 2022, and received the Termination Payment on the deadline.[10]

---

[10] Defendants accuse Plaintiff of "split[ting] hairs" by arguing that the TOE clause applied to the notice but not to the payment requirement; that position is borderline comical given Defendants' own trivial argument that Plaintiff's Termination Notice is invalid for failing to make the Termination Payment at the exact same time as Defendants received the Termination Notice. *See* Def. Mem. at 14. In fact, the record reveals that Plaintiff first contacted Defendants about Plaintiff's decision to exercise the early termination option as early as March 3, 2022, and that Plaintiff reminded Defendants of its intent on July 8, 2022. *See* JSOF ¶¶ 6–10.

In short, the Court finds that Plaintiff, at the very least, substantially complied with the early termination provision by tendering the Termination Payment concurrently with the provision of actual notice.[11] Even in the light most favorable to Defendants, Plaintiff has demonstrated that it is entitled to summary judgment on its declaratory judgment claim.

## II. Plaintiff's Request for Attorneys' Fees

New York follows the "American Rule" regarding attorneys' fees, *see A.G. Ship Maint. Corp. v. Lezak*, 503 N.E.2d 681, 683 (N.Y. 1986), pursuant to which "attorney's fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor," *Summit Valley Indus., Inc. v. Local 112 United Bhd. of Carpenters & Joiners*, 456 U.S. 717, 721 (1982) (internal quotation marks omitted); *see also Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199 (2d Cir. 2003) ("Under the general rule in New York, attorneys' fees are the ordinary incidents of litigation and may not be awarded to the prevailing party unless authorized by agreement between the parties, statute, or court rule."). The Court, however, "has the general power to award 'actual expenses reasonably incurred and reasonable attorney's fees, resulting from frivolous conduct' in civil litigation." *Singer v. Xipto Inc.*, 852 F. Supp. 2d 416, 427 (S.D.N.Y. 2012) (quoting N.Y. Comp. Codes R. & Regs. tit. 22, § 130–1.1(a)).

The so-called "bad-faith exception" to the American Rule permits the Court to shift the burden of attorneys' fees based on "the conduct of the party in instigating or maintaining the litigation" if the Court finds "substantive bad faith as exhibited by, for example, its pursuit of

---

[11] Indeed, but for Defendants' refusal to confirm the wire instructions, Defendants would have received the Termination Payment even sooner. *See* Pl. Mem. at 22–23; Pl. Reply at 11–15. Of course, Defendants are technically correct in that there was no requirement that payment be made by wire transfer, but the fact that Plaintiff was attempting to make a wire transfer — a faster method of sending funds than ACH — at the very least reflects a diligent effort to comply strictly with the early termination provision. *See Waldbaum, Inc.*, 650 N.E.2d at 1302. Moreover, as this Court has stated previously, Defendants were not permitted to thwart Plaintiff's ability to perform. *See* Op. & Order at 16–17, Dkt. 48 (citing New York's "prevention doctrine" as a basis for finding Defendants' tactically timed refusal to communicate with Plaintiff regarding its request to make the Termination Payment as "a violation of the implied contractual obligation not to frustrate a counterparty's ability to perform").

11

frivolous contentions, or procedural bad faith as exhibited by, for example, its use of oppressive tactics or its willful violations of court orders." *In re New York Skyline, Inc.*, 471 B.R. 69, 90 (Bankr. S.D.N.Y. 2012) (citing *Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329, 345 (2d Cir. 1986)).

Plaintiff appears to argue that it is entitled to attorneys' fees for two reasons: first, on account of Defendants' pre-litigation conduct, including Defendants' admitted refusal to provide Plaintiff with wiring instructions in an alleged attempt to "manufacture a fraudulent basis to reject the Termination Notice" in breach of the Lease. Pl. Reply at 16.[12]  Second, Plaintiff argues that Defendants' "persisting with [their] defenses and stubbornly refusing to stand down," Pl. Mem. at 23–24, and Defendants' "bogus counterclaim, ensuing wrongful redaction of documents, failure to produce an adequately prepared 30(b)(6) deponent, and [] [their] frivolous cross-motion which fails to reckon with the controlling law that compels only one outcome in this case," Pl. Reply at 17, warrants a deviation from the American Rule to shift Plaintiff's attorneys' fees onto Defendants.

Although it is an extremely close case, the Court is reluctant to award attorneys' fees based on the circumstances here.  While the Court agrees that Defendants breached the Lease by rejecting Plaintiff's properly made notice of early termination and finds that Defendants should be embarrassed by the arguments they have made and their conduct in this case, the Court cannot find that Defendants' conduct was so wanton or frivolous as to demand a deviation from the general rule.

---

[12]  Defendants' rejection of the Termination Notice forms the basis for Plaintiff's second cause of action for breach of the Lease. *See* Compl. ¶¶ 76–82; Pl. Reply at 16–17.  Plaintiff did not argue in its brief in support of its summary judgment motion for a declaratory judgment on its second cause of action, nor for attorneys' fees in connection with that claim, but appears to be attempting to revive the claim for breach of the Lease in its reply brief. Pl. Reply at 16–17.

In short, the Court denies Plaintiff's request for attorneys' fees and costs.

### III. Defendants' Motion for Summary Judgment

Defendants cross-moved for summary judgment. Defendants seek a declaratory judgment that (1) Plaintiff did not terminate the Lease; (2) that, pursuant to § 34.01(c) of the Lease, Article 34 shall be deemed null and void and deleted from the Lease; and (3) that the Lease remains in full force and effect through the original expiration date of April 14, 2028. *See* Def. Mem. at 3. Defendants also seek attorneys' fees pursuant to Section 20.01 of the Lease, which purports to hold Plaintiff responsible for Defendants' attorneys' fees and expenses in the event of Plaintiff's default of the Lease. *See* Def. Mem. at 21–22; *see also* Pl. Reply at 20–21.

Defendants argue that Plaintiff failed to comply with the early termination provision because Plaintiffs failed to deliver the Termination Notice concurrently with the Termination Payment and in the specific manner required by the Lease. Def. Mem. at 13. Because the Court finds that Plaintiff validly exercised the early termination option and is entitled to declaratory judgment on that claim, the Court denies Defendants' cross-motion. Although a contractual provision that shifts the burden of attorneys' fees onto a prevailing party may operate as an exception to the American Rule, *see supra*, that principal does not apply here where the Court finds in Plaintiff's favor.

## CONCLUSION

In sum, Plaintiff's motion for summary judgment is granted in part and denied in part. Plaintiff validly exercised the early termination provision of the Lease. Accordingly, the Lease shall terminate on October 14, 2023, the undisputed termination date given Plaintiff's timely notice of termination. The Clerk of Court is respectfully directed to close the open motions at docket entries 41 and 50 and to CLOSE this case.

**SO ORDERED.**

**Date:  May 1, 2023**  **VALERIE CAPRONI**
**  New York, NY**  **United States District Judge**